**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| **PRECISION INDUSTRIES, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **8:09CV195** |
| | ) | |
| **vs.** | ) | **ORDER** |
| | ) | |
| **TYSON FOODS, INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |

This matter is before the court on the plaintiff's Motion to Compel responses to the plaintiff's First Set of interrogatories (Filing No. 42). The plaintiff filed a brief and index of evidence in support of the motion (Filing Nos. 43 and 44). The defendant filed a brief and index of evidence in opposition to the motion. (Filing Nos. 50 and 51). The plaintiff filed a brief (Filing No. 53) in reply.

## BACKGROUND

This case arises from a contract dispute between the plaintiff, Precision Industries, Inc. (Precision) and the defendant, Tyson Foods, Inc. (Tyson). On or about April 20, 2002, Precision and Tyson entered into a written contract (the Contract), whereby Precision was obligated to supply repair parts and equipment for Tyson's operating plans located throughout the United States. **See** Filing No. 1 - Complaint, ¶ 7. Tyson's aggregate annual expenditure with Precision was estimated to be in excess of $48,000,000. **Id.** The initial term of the contract was sixty months, with an option to renew. **Id.** at ¶ 9. Tyson elected not to renew the contract with Precision, instead electing to solicit bids from Precision's competitors. **Id.** at ¶ 10. Precision filed its Complaint against the defendant alleging breach of contract for Tyson's refusal to negotiate an extension of the contract in good faith, and failure of Tyson to purchase inventories specifically committed to Tyson under contract. **See** Filing No. 1 - Complaint. The court dismissed the first cause of action. The remaining claim relates to Tyson's contractual obligation to purchase inventories specifically reserved for Tyson. **See** Filing No. 42, p. 1.

Paragraph 4.3 of the Contract provides as follows:

> **4.3** In the event Tyson Foods Contract dated April 20, 2002 is terminated at any time for any reason, or upon the original term or any extended term of the Contract, Precision shall be obligated to sell and Tyson shall be obligated to purchase *inventories specifically committed for Tyson* (inventory items held at a Precision facility for Tyson based on customer's historical usage plus items identified as *critical spares* for Tyson), as well as product on order for Tyson if Precision cannot cancel the open orders without penalty. Precision is obligated to sell the committed inventory and items on order at the preferred contract prices then in effect between the parties.

**See** Filing No. 1, ¶ 19 (emphases added). Precision claims Tyson has failed and refused to repurchase the inventories of parts and equipment maintained by Precision and specifically committed to Tyson in violation of paragraph 4.3 of the Contract. **Id.** at ¶ 20. Precision resold and/or returned parts to the manufacturer in an attempt to mitigate damages where possible. **Id.** at ¶ 21. However, Precision continues to hold a substantial inventory of parts and equipment specifically maintained for the Tyson plants. **Id.** Precision has made several demands on Tyson to repurchase the inventory, and presently estimates damages in excess of $6,000,000. **Id**. at ¶¶ 22, 23.

By its terms, the contract terminated on April 20, 2007. **See** Filing No. 43, p. 2. On April 19, 2007, Precision provided Tyson with a list of its inventory on hand and requested payment pursuant to paragraph 4.3 of the Contract. **Id**. This inventory list was delivered on a CD and contained a detailed itemization of part numbers, purchase orders, purchase history, and the remaining quantity for which Tyson was liable. **Id**. Precision spent numerous hours to compile this detailed information. **Id.** Each item on the list tied back to a purchase order and the part number assigned by Tyson. **Id.** The list contained entries for over 20,000[1] individual items, including how many items remained in the inventory dedicated to Tyson and the price of each. **Id**.

[1] Precision's Inventory Extract contains an Excel spreadsheet listing 23,702 lines of parts and related data including part numbers, descriptions and order information. **See** Filing No. 50, p. 3.

Having received no payment and following commencement of the current litigation, the plaintiff served Interrogatories on Tyson on or about April 16, 2009, according to the plaintiff's motion to compel. **See** Filing No. 42, p. 1. The plaintiff requested, among other things, Tyson's reasons for disputing Precision's claims for damages under the Contract. **Id.** On November 19, 2009, Precision sent Tyson a CD containing a spreadsheet with an updated itemization of the Precision's inventory claim. **See** Filing No. 43, p. 2. Tyson responded to the interrogatories on or about December 2, 2009, objecting to Interrogatories Nos. 4 and 5. **Id.** at 3. On December 7, 2009, Precision's counsel wrote a letter addressing the objections in some of Tyson's answers to the interrogatories. **See** Filing No. 42, p. 2. Counsel for Tyson responded by letter dated December 30, 2009, and agreed to supplement its responses to Interrogatory No. 4 after a review of the inventory data provided by Precision on November 19, 2009. **See** Filing No. 43, p. 3. On January 4, 2010, counsel for both parties conferred by telephone in an effort to resolve the discovery dispute. **Id.** Following the telephone conference, Precision received a letter from Tyson's counsel dated January 8, 2010, in which Tyson agreed to supplement their answers to Interrogatories Nos. 4 and 5. **Id**. As of the date hereof, Tyson has failed to supplement its responses to any of Precision's interrogatories. **Id**.

The sole claim remaining in this suit is for breach of contract related to Tyson's refusal to purchase the committed inventory and critical spare parts (collectively "Committed Inventory") on hand at the end of the Contract term. According to the plaintiff, Interrogatory No. 4 asks Tyson to disclose the factual basis for denying Precision's claim for payment on the Committed Inventory. **See** Filing No. 43, p. 5. It states,

> **Interrogatory No. 4**: For each of the inventory items held by Precision for Tyson, set forth the facts upon which you rely in denying that Tyson has a purchase obligation under Section 4.3 of the Agreement, including within your answer:
>
> a. the identity of all persons with knowledge of the facts upon which your answer is based; and
>
> b. the identity of all documents which relate in any way to the facts upon which your answer is based.

Tyson answered as follows:

> Tyson objects to this Interrogatory for the reason the phrases "inventory items held by Precision for Tyson and "which relate in any way" are vague because the Interrogatory does not specify with sufficient detail the precise information which it is seeking. Tyson further states that it is (1) not aware of responsive information because it has no knowledge of what constitutes each of the inventory items "held by Precision for Tyson"; and (2) this Interrogatory otherwise on its face seeks information which is in the possession, custody or control of Precision and not Tyson.
>
> a. [Here Tyson identified individuals with knowledge of the facts.]
>
> b. Further, still, and without waiving its objections, the answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Tyson's business records (including electronically stored information). The business records of Tyson responsive to this Interrogatory and subject to the Protective Order have been, or will be, *provided for Precision's inspection at a mutually agreed-upon date*. (emphasis added).

**See** Filing No. 43 - Brief, p. 5. Tyson agreed to produce business records and further agreed to supplement this response by January 18, 2010, but has failed to do so. **See Id.** at 6. Interrogatory No. 5 aims to complement Interrogatory No. 4 by seeking information regarding the analysis conducted by Tyson to reach its conclusion. **Id.** It states:

> **Interrogatory No. 5**: With respect to the inventory data provided by Precision to Tyson on or about April 9, 2007, in connection with Precision's request that Tyson purchase the inventory, provide the following information:
>
> a. the identity of all persons who reviewed and/or analyzed the inventory data on behalf of Tyson;
>
> b. identify all documents which reflect and/or related in any way to Tyson's review and/or analysis of the inventory data; and
>
> c. set forth all conclusions reached by Tyson from its review and/or analysis of the inventory data.

Tyson answered as follows:

> Tyson objects to this Interrogatory for the reason the phrases "inventory items held by Precision for Tyson" and "Precision's request that Tyson purchase inventory" and "all conclusions reached by Tyson" are vague and because the Interrogatory does not specifically identify the information it is seeking.

a. [Here Tyson identified individuals with knowledge of the facts.]

b-c. Further still, and without waiting its objections, the answer to this Interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing Tyson's business records (including electronically stored information). The business records of Tyson responsive to this Interrogatory and subject to the Protective Order have been, or will be, *provided for Precision's inspection at a mutually agreed-upon date*. (emphasis added).

**See Id.** at 6. Precision claims these two interrogatories are intended to directly frame the issues at the heart of the litigation. **See** Filing No. 43, p. 7. Without Tyson's response, Precision is left to guess at which items are disputed and why. **Id.** According to Precision, the records provided to Tyson are meticulous and include identifying information broken down by each individual item. **Id** at 8. Therefore, Precision requests Tyson answer Interrogatories Nos. 4 and 5, in order that Precision may determine which of the items are disputed for payment under the Contract. **Id.** As Precision points out in its brief in support of the motion, the sole remaining issue in the case is not whether Tyson is required to purchase the Committed Inventory, but, rather, whether the Committed Inventory maintained by Precision fits the definition under the Contract. **Id.** Until Tyson can identify which items it disputes under the Contract, Precision believes it cannot conduct meaningful discovery and properly frame the issues for trial.

In response, the defendant argues Precision has misinterpreted the terms and operation of the Contract between the parties. **See** Filing No. 50, p. 1. Tyson claims the Contract requires Precision to first identify which manufacturing parts were specifically held or identified by Precision's accounting records as critical spare parts for Tyson. **Id.** Additionally, in response to the information requested, Tyson claims it has either already been produced, or is overly broad and requires Tyson to prepare work product for Precision's use at trial. **Id.** Tyson additionally argues for Precision to produce something called "perpetual inventory records" which would demonstrate whether each manufacturing part was specifically "held" or "identified" by Precision. **Id**. at 3. On January 19, 2010, Tyson provided to Precision a CD containing a breakdown of the categories of inventory data in which Tyson had the least confidence, and requesting additional documentation

from Precision regarding whether Tyson previously purchased certain items during the Contract period. **Id**. at 6.; and Filing No. 51-4, Exhibit C. Tyson also answered the Interrogatories by stating responsive business records "have been, or will be, provided for Precision's inspection at a mutually agreed upon date." **See** Filing No. 50, p. 7. The crux of Tyson's argument is that it is the responsibility of Precision to specify which inventory items were specifically "held" or "identified" for Tyson, and responding to Interrogatories Nos. 4 and 5 imposes an undue burden on Tyson. **Id.** at 7-10.

By reply brief, the plaintiff argues that Tyson has raised, for the first time, the argument that it is unable to respond to Interrogatories Nos. 4 and 5 because Precision has not provided "perpetual inventory data." **See** Filing No. 53, p. 1. Precision argues, first, that because Tyson did not respond to the Interrogatories with this argument, it should now be waived under Fed.R.Civ.P. 33(b)(4). **Id.** at 1, 3. Second, Precision aptly points out that Tyson does not explain what it means by "perpetual inventory records," nor was there ever a prior request for such documents. **Id.** As Precision previously noted, it provided Tyson with a detailed list of the Committed Inventory held for Tyson. **Id.** Further, after agreeing to provide responsive business records, Tyson changed its position and now claims both that their previous response was sufficient, and/or that the requested information is overly broad and burdensome. **Id.** at 2.

Plaintiff states, "Precision *has* provided a detailed accounting of the items that were 'held' in its system or otherwise 'identified' as a critical spare for Tyson. That is exactly what was included in the database that was provided. It is unclear from Tyson's argument exactly what additional information they are seeking." **Id.** at 3. According to Precision, the information provided on November 19, 2009, provides a complete accounting of the Committed Inventory and is precisely the information Tyson seeks. **Id.** at 4. The plaintiff states it provided the defendant with Committed Inventory summaries throughout the last year of the Contract. **Id.** at 5. In addition, in April, 2007, at the conclusion of the Contract, Precision provided information about Committed Inventory on hand at the end of the Contract term. **Id.** The amount of Committed Inventory identified at that time totaled over $14 million. **Id.** According to the plaintiff, the recently provided database has been updated to reflect a detailed list of all items "held" by Precision for Tyson or "identified" for

Tyson as critical spares. **Id.** at 5-6. The amount of the Committed Inventory now outstanding as identified in the November, 2009, database is $4.9 million.[2] **Id.** at 6. Finally, Precision argues it has already assumed the burden of compiling the necessary information for Tyson, and now it is simply waiting for Tyson to identify which particular Committed Inventory items it disputes. **Id.** Until Tyson identifies the disputed items, the plaintiff is left to guess, and cannot properly prepare for trial in this manner. **Id.** at 8.

## ANALYSIS

Parties may discover any relevant, unprivileged information that is admissible at trial or is reasonably calculated to lead to admissible evidence. **See** Fed. R. Civ. P. 26(b)(1). Relevancy is to be broadly construed for discovery issues and is not limited to the precise issues set out in the pleadings. Relevancy, for purposes of discovery, has been defined by the United States Supreme Court as encompassing "any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." ***Oppenheimer Fund, Inc. v. Sanders***, 437 U.S. 340, 351 (1978). Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action. **See *Burlington Ins. Co. v. Okie Dokie, Inc.***, 368 F. Supp. 2d 83, 86 (D. D.C. 2005). The proponent of discovery must make a threshold showing of relevance before production of information, which does not reasonably bear on the issues in the case, is required. ***Hofer v. Mack Trucks, Inc.***, 981 F.2d 377, 380 (8th Cir. 1993).

Once the requesting party meets the threshold relevance burden, generally "[a]ll discovery requests are a burden on the party who must respond thereto. Unless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden." ***Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Caton***, 136 F.R.D. 682, 684-85 (D. Kan. 1991) (citation

[2] The reason for the difference between the April, 2007 amount and the November, 2009 amount is that Tyson purchased some of the inventory and Precision used its best efforts to mitigate damages by selling or returning products, when possible. **See** Filing No. 53, p. 6, fn 2.

omitted). The party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper. ***St. Paul Reinsurance Co., Ltd. v. Commercial Fin. Corp.***, 198 F.R.D. 508, 511-12 (N.D. Iowa 2000) (objecting party has the burden to substantiate its objections). Bare assertions that discovery requested is overly broad, unduly burdensome, oppressive or irrelevant are ordinarily insufficient to bar production. ***Id.*** "The party resisting discovery must show specifically how . . . each interrogatory [or request for production] is not relevant or how each question is overly broad, burdensome or oppressive." ***Id.*** (citations omitted). The party resisting discovery has the burden to show facts justifying its objection by demonstrating that the time or expense involved in responding to requested discovery is unduly burdensome. **See *Wagner v. Dryvit Sys., Inc.***, 208 F.R.D. 606, 610 (D. Neb. 2001). This imposes an obligation to provide sufficient detail and explanation about the nature of the burden in terms of time, money and procedure required to produce the requested documents. **See *id.*** The District Court has discretion to limit the scope of discovery if it has a good reason to do so. ***Credit Lyonnais v. SGC Int'l, Inc.***, 160 F.3d 428, 431 (8th Cir. 1998).

Further, Federal Rule of Civil Procedure 33 provides:

> An interrogatory may relate to any matter that may be inquired into under Rule 26(b). An interrogatory is not objectionable merely because it asks for an opinion or contention that relates to fact or the application of law to fact, but the court may order that the interrogatory need not be answered until designated discovery is complete, or until a pretrial conference or some other time.

Fed. R. Civ. P. 33(a)(2). "The responding party must serve its answers and any objections within 30 days after being served with the interrogatories." Fed. R. Civ. P. 33(b)(2). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." Fed. R. Civ. P. 33(b)(3). If an objection is made, "[t]he grounds for objecting to an interrogatory must be stated with specificity. Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure." Fed. R. Civ. P. 33(b)(4). The responding party may answer by "specifying the records that must

be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could." Fed. R. Civ. P. 33(d)(1).

In the instant matter, Interrogatories Nos. 4 and 5 seek to identify the Committed Inventory items which Tyson disputes, who reviewed the relevant files, and on what basis they maintain an objection to certain items. This is clearly relevant to the issues in the case and reasonably calculated to lead to admissible evidence in this matter. The disputed Committed Inventory items are the crux of the current litigation, therefore requesting answers from Tyson as to which items are disputed and which are not, should come as no surprise to the defendant. The plaintiff diligently collected extremely detailed records on over 20,000 Committed Inventory items and presented this information to the defendant in a well documented Excel spreadsheet over three years ago and, again, in November, 2009.[3] According to plaintiff's letter to defendant's counsel dated November 19, 2009, there is only $11,000 in inventory items for which the plaintiff does not have detailed records available - a small sum compared to the $4.9 million now at issue. **See** Filing No. 51-3 - Defendant's Index in Support of Brief, Ex. B.

The defendant's response is confusing. First, the defendant agreed to comply with the request to answer Interrogatories Nos. 4 and 5. Then the defendant stated business records would be provided at a later date, that responsive documents had already been provided, and, finally, that the task of doing so was unduly burdensome and the request overly broad. It appears the inventory list provided to the defendant, albeit containing over 20,000 entries originally, is a true and correct accounting of the items Precision feels are required for purchase by Tyson under the Contract. These 20,000 items are exactly those that Precision held or identified for Tyson under the Contract. Now the burden is on Tyson to review its own records and determine which, if any, of the 20,000 Committed Inventory items it disputes purchasing under the terms of the Contract. Whether that is one item, or all of the items, Tyson is required to undertake the same review previously conducted by the plaintiff, in order to get to the substantive issues in the case. Further disagreement

---

[3] The original spreadsheet delivered in April, 2007, contained over 20,000 entries and the plaintiff was seeking over $14 million in damages. **See** Filing No. 53, p. 5. It is unclear how many inventory item entries were contained on the updated spreadsheet provided in November, 2009, however it is presumably fewer than 20,000 as the plaintiff is now seeking $4.9 million in damages. **See Id.** at 6.

about which items should or should not be included will ultimately be issues to be determined at trial. In the meantime, Tyson must make a good faith effort to identify which items it disputes, what documents Tyson relied on in making that decision, and which persons reviewed or analyzed the inventory data, among other things. The court finds it no more burdensome for the defendant to rebut this information than it was for the plaintiff to compile it. Accordingly, the defendant shall reply to Interrogatories Nos. 4 and 5. Upon consideration,

**IT IS ORDERED:**

1. The plaintiff's motion to compel (Filing No. 42) is granted.

2. Tyson Foods, Inc. shall supplement its responses for Interrogatories Nos. 4 and 5 **on or before May 7, 2010.**

**ADMONITION**

Pursuant to NECivR 72.2 any appeal of this Order shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order. Failure to timely appeal may constitute a waiver of any objection to the Order. The brief in support of any appeal shall be filed at the time of filing such appeal. Failure to file a brief in support of any appeal may be deemed an abandonment of the appeal.

DATED this 20th day of April, 2010.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge

---

*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.